FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 12, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OLGA M.,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>　　　　　　　Defendant. | NO:  1:18-CV-03192-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 13.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration.  Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P. 25(d).

ORDER ~ 1

represented by Special Assistant United States Attorney David J. Burdett. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is granted and Defendant's Motion, ECF No. 13, is denied.

## JURISDICTION

Plaintiff Olga M.[2] (Plaintiff), filed for disability insurance benefits (DIB) on March 12, 2012, alleging an onset date of October 15, 2010. Tr. 227-28. Benefits were denied initially, Tr. 115-17, and upon reconsideration, Tr. 121-25. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 21, 2014. Tr. 41-63. On July 24, 2014, the ALJ issued an unfavorable decision, Tr. 18-40, and on February 23, 2016, the Appeals Council denied review. Tr. 1-6.

Plaintiff filed a complaint in the U.S. District Court for the Eastern District of Washington on April 26, 2016. Tr. 716-18. Pursuant to the stipulation of the parties, on November 2, 2016, United States Magistrate Judge Mary K. Dimke entered an Order Granting Stipulated Motion for Remand. Tr. 727-28. After a second hearing on August 1, 2017, Tr. 667-86, the ALJ issued another unfavorable decision on June 15, 2018. Tr. 625-54. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

# BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1979 and was 38 years old at the time of the second hearing. Tr. 38, 227. She went to school through the third or fourth grade in Mexico. Tr. 47. She understands limited English. Tr. 47. She has work experience at a chocolate cherry factory and sorting and packing apples at a warehouse. Tr. 48.

Plaintiff testified she stopped working at the chocolate cherry factory due to back pain. Tr. 49. She frequently has low back pain which she said ranges in severity from five to ten out of ten. Tr. 676. Her low back pain radiates to her upper back. Tr. 677. She experiences weakness and pain in her right leg from her hip down the leg to the bottom of her foot. Tr. 678. One of her legs is longer than the other. Tr. 678. She testified she needs to lie down two to three times a day for 15-30 minutes at a time because she gets tired easily and the pain makes her fatigued. Tr. 679. Three or four times a month, Plaintiff has headaches which last all day and part of the night. Tr. 674. When she has a migraine, she needs to lie down in a dark room for most of the day. Tr. 674, 679. She becomes nauseated and sometimes vomits when she has a migraine. Tr. 675. Plaintiff also has pain from a kidney problem. Tr. 675. She experiences severe kidney pain, rated at nine or ten out of ten, four to five times per month. Tr. 676.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or

ORDER ~ 5

her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from October 15, 2010, the alleged onset date, through December 31, 2015, her date last insured. Tr. 634. At step two, the ALJ found that Plaintiff has the following severe impairments: organic mental disorder; affective disorder; varicose veins of the lower extremities; migraine headaches; kidney cysts; and back pain due to leg length discrepancy and mild straightening. Tr. 634. At step three, the ALJ

ORDER ~ 7

found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 634.

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity to perform light work with the following additional limitations:

> She could lift and carry 20 pounds occasionally and ten pounds frequently; stand or walk for two hour intervals for a total of eight hours per day; no sitting restrictions; could not climb ladders, ropes, or scaffolds; could frequently climb stairs and ramps; frequently balance, stoop, kneel, crouch, or crawl; was able to understand and remember instructions for tasks generally required by occupations with a SVP level of one or two; able to carry out instructions for tasks generally required by occupations with an SVP level of one or two (that is occupations with tasks that could be learned within 30 days or with simple demonstration); have occasional interaction with the general public; and had limited English speaking ability.

Tr. 637.

At step four, the ALJ found that Plaintiff was capable of performing past relevant work. Tr. 644. Alternatively, at step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform such as housekeeping cleaner, production assembler, or packing line worker. Tr. 646. Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from October 15, 2010, the alleged onset date, through December 31, 2015, the date last insured. Tr. 646.

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly considered the medical opinion evidence;

2.    Whether the ALJ properly evaluated Plaintiff's symptom claims;

3.    Whether the ALJ properly considered Plaintiff's English language limitations; and

4.    Whether the ALJ properly considered Plaintiff's migraines.

ECF No. 10 at 5.

## DISCUSSION

### A.    Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly consider the opinions of reviewing physician Gordon Hale, M.D.; examining psychologist CeCilia Cooper, Ph.D.; examining physician Aaron Killpack, D.O.; treating physician Phillip Mendoza, M.D.; treating provider John Lelis, PA-C; and treating provider, Dave Bullock, PT. ECF No. 10 at 9-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally,

ORDER ~ 9

a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31) (updated 12/19) (20 CFR 404.5127 applies to claims filed before 3/27/17).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than an opinion from a source who is not an acceptable medical source or who is a non-medical source. 20 C.F.R. § 404.1527; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); *see* 20 C.F.R. § 404.1502 (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-

ORDER ~ 10

language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists. 20 C.F.R. § 404.1527(f). The ALJ is required to consider evidence from non-acceptable medical sources but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1104.

### 1. Gordon Hale, M.D.

Dr. Hale reviewed the file and completed a Physical Residual Functional Capacity assessment in November 2012. Tr. 100-02. Dr. Hale opined Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry ten pounds, stand or walk six hours in an eight-hour workday, and sit more than six hours in an eight-hour workday. Tr. 101. He assessed a postural limitation of occasional climbing of ladders, ropes or scaffolds. Tr. 101. He also found Plaintiff should avoid concentrated exposure to all environmental limitations, including noise. Tr. 102. Dr. Hale indicated the environmental limitations were assessed due to Plaintiff's migraines and back. Tr. 102.

The ALJ gave most of Dr. Hale's opinion great weight. Tr. 642. The ALJ observed the exertional restrictions assessed by Dr. Hale are consistent with light work and found that the exertional and postural limitations "accommodate the claimant's complained of back pain and mild imaging findings, and infrequent complain[ts] of leg pain." Tr. 642. However, the ALJ gave little weight "to many of

ORDER ~ 11

the environmental restrictions, as there is no basis for some of the avoidances. For example, the claimant was not diagnosed with a respiratory condition or hearing condition that would require avoidance of pulmonary irritants or noise." Tr. 642.

Plaintiff contends the ALJ improperly rejected the noise limitation assessed by Dr. Hale. ECF No. 10 at 15. Indeed, although the ALJ found that Plaintiff was not diagnosed with a hearing condition that requires avoidance of noise, Dr. Hale noted that the noise and other environmental limitations were assessed due to Plaintiff's migraines and back issues. Tr. 102. Thus, the ALJ overlooked the basis for the finding and therefore the consideration of Dr. Hale's opinion is based on error.

### 2. CeCilia Cooper, Ph.D.

In July 2012, Dr. Cooper completed a psychological evaluation and diagnosed cognitive disorder NOS and adjustment disorder with mixed anxiety and depressed mood. Tr. 542-49. Dr. Cooper also noted some mental status exam responses suggest below average intellectual functioning. Tr. 548. She opined that Plaintiff's last pregnancy and increased childcare responsibilities may be contributing to her anxiety and depression, but that cognitive testing and observed behaviors suggest the presence of an organic impairment. Tr. 548-49. Dr. Cooper indicated Plaintiff is able to understand, remember, and carry out instructions involving two or three closely related steps to be completed within a short period of time; she would have difficulty with complex instructions; she would do tasks slowly; she would have problems with change because her thinking is concrete; she would have difficulty maintaining attention and concentration for extended periods of time; she would not

ORDER ~ 12

be reliable in responding to normal hazards; she would require close supervision to ensure she completes tasks as instructed throughout a normal shift; she would usually get along with supervisors and coworkers; her appearance would be acceptable in many casual settings; and she might require help to keep her surroundings in order, depending upon the task. Tr. 549.

The ALJ gave partial weight to Dr. Cooper's opinion. Tr. 644. The ALJ gave great weight to Dr. Cooper's opinion that Plaintiff is able to understand, remember, and carry out instructions for tasks involving two or three closely related steps but would have difficulty completing more complex instructions; and to Dr. Cooper's opinion that Plaintiff has no limitation regarding interaction with supervisors and coworkers. Tr. 644. However, the ALJ gave less weight to the other limitations assessed by Dr. Cooper. Tr. 644.

The only reason given by the ALJ for rejecting most of the limitations assessed by Dr. Cooper is, "[f]or example, there is no objective evidence the claimant would have problems with change or could not reliably respond to normal hazards. The claimant's ability to care for her minor children, raise a newborn during the relevant period, cook and clean for her family, and continue to drive suggest otherwise." Tr. 644. Even if the foregoing reasonably supports the ALJ's finding with regard to Plaintiff's ability to deal with change and hazards, this does not address the other significant limitations assessed by Dr. Cooper: that Plaintiff would perform tasks slowly; would have difficulty maintaining attention and concentration for extended periods of time; and would require close supervision to

ORDER ~ 13

ensure she completes tasks as instructed throughout a normal shift.  The ALJ's

failure to address these limitations means that Dr. Cooper's opinion was not

adequately considered.  On remand, the ALJ should reevaluate Dr. Cooper's

opinion and address all of the limitations contained therein.

### 3. Aaron Killpack, D.O.

Dr. Killpack examined Plaintiff in December 2013 and diagnosed lumbago.

Tr. 590-91.  He also indicated that anxiety and depression reasonably cause pain.

Tr. 590.  He opined Plaintiff needs to lie down for one hour two times a day for

pain.  Tr. 590.  When asked whether work on a regular and continuous basis would

cause Plaintiff's condition to decline, Dr. Killpack indicated that it was "too early

to tell."  Tr. 591.  He opined that Plaintiff likely would miss work due to her

medical impairments, but did not estimate how many days per month Plaintiff

would miss work, explaining again that it was "too early to tell."  Tr. 591.  He

recommended that Plaintiff not return to work due to chronic back pain.  Tr. 591.

The ALJ gave little weight to Dr. Killpack's opinion.  Tr. 642.

First, the ALJ found Dr. Killpack's opinion that Plaintiff needs to lie down

for one hour two times per day is not supported by the treatment record.  Tr. 642.

The consistency of a medical opinion with the record as a whole is a relevant factor

in evaluating a medical opinion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th

Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ noted that

Plaintiff did not regularly report to her treating providers that she needed to lie

down multiple times per day due to pain, nor did she complain of chronic fatigue. Tr. 642 (citing Tr. 592-624). Plaintiff argues the finding is not relevant because a claimant does not dictate her own limitations. ECF No. 10 at 12. However, the ALJ's determination is reasonable that the limitation is unsupported by complaints of fatigue or pain so limiting that Plaintiff needs to lie down.

Second, the ALJ concluded that the findings on physical exam are not severe enough to support daily interruptions from pain. Tr. 642. A medical opinion may be rejected if it is unsupported by medical findings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). The ALJ observed that Plaintiff rated her pain at only four out of ten during Dr. Killpack's examination and that Dr. Killpack's exam was limited as he did not make gait or strength findings, although he made findings regarding range of motion and tenderness. Tr. 643 (citing Tr. 602-03). Plaintiff observes that notwithstanding, Dr. Killpack's objective findings included hypertonicity of paraspinal muscles, positive right standing flexion test, positive left sitting flexion test, and tender paraspinal muscles. ECF No. 13 at 22 (citing Tr. 603). The ALJ also cited a September 2013 exam by a different provider in the same clinic noting a mild limp but normal lumbar range of motion, normal motor strength, and no sensory abnormalities. Tr. 643 (citing Tr. 609). However, Plaintiff cites an October 2013 exam with

ORDER ~ 15

objective findings of a positive FABER test on the left side, positive straight leg raise on the left side, and diminished strength on the left rated at 3-4/5 on the left side. ECF No. 10 at 13 (citing Tr. 606-07). Because this case is remanded on other grounds, the ALJ should reconsider this finding in light of the evidence cited by Plaintiff.

Third, the ALJ found that Dr. Killpack's responses suggest a lack of knowledge about Plaintiff's condition. Tr. 643. The amount of relevant evidence that supports an opinion, the quality of the explanation provided in an opinion, and the consistency of a medical opinion with the record as a whole are all relevant factors in evaluating the opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ suggests that Dr. Killpack's responses indicating it is "too early to tell" in assessing Plaintiff's prognosis, evaluating the impact of regular work on Plaintiff's condition, and estimating of the number of days per month Plaintiff would miss work show that Dr. Killpack was not familiar with Plaintiff's condition. Tr. 585, 643. Plaintiff argues that Dr. Killpack's status as a treating physician and his willingness only to opine regarding certain issues should lend weight to his opinion. ECF No. 10 at 13.

It is not clear why the ALJ found that Dr. Killpack's reluctance to speculate or estimate about future outcomes indicates a lack of knowledge about her present condition. It seems entirely reasonable that Dr. Killpack may not yet have an opinion about Plaintiff's future abilities but could still be able to make findings

ORDER ~ 16

about her current condition.  At the same time, such equivocation reasonably makes Dr. Killpack's opinion less useful to the ALJ in evaluating limitations and assessing the RFC.  Since this matter is remanded on other grounds, the ALJ should reevaluate this reasoning and consider the limitations assessed by Dr. Killpack rather than the limitations he declined to address.

### 4. Phillip Mendoza, M.D.

In May 2011, Dr. Mendoza, a treating physician, indicated in a handwritten note that Plaintiff was under his care for her pregnancy and new onset lower extremity weakness and opined that she was currently unable to work due to those conditions.  Tr. 382.  The ALJ gave little weight to Dr. Mendoza's opinion.  Tr. 644.

First, the ALJ found pregnancy is not a proper basis for a disability finding because it is a temporary condition and does not meet the duration requirement.  Tr. 644.  The regulations provide that "[u]nless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  We call this the duration requirement."  20 C.F.R. § 404.1509.  This is a specific, legitimate reason for rejecting the opinion.

Second, the ALJ found there is insufficient objective evidence of ongoing lower extremity weakness that would preclude the claimant from all work activity.  Tr. 644.  An ALJ may discredit treating a physician's opinion that is unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ noted that

physical examinations revealed normal lower extremity strength levels. Tr. 644 (citing Tr. 525, indicating normal lower extremity reflexes, sensation, pulses, and strength in September 2010). Plaintiff contends records from April and October 2013 indicating reduced lower extremity strength in her left leg contradict this finding. ECF No. 10 at 12 (citing Tr. 605-07, 615). Notably, those findings were made two years after Dr. Mendoza rendered his opinion, and, even if there is evidence of some lower extremity weakness in the record, the ALJ's point is that there is no evidence supporting Dr. Mendoza's opinion that Plaintiff would be precluded from all work activity by such weakness. Tr. 644. Based on the foregoing, the ALJ's interpretation of the evidence was reasonable. This is a specific, legitimate reason for rejecting the opinion.

   5. *John Lelis, PA-C*

   Mr. Lelis, a treating provider, completed a medical report in February 2013 and listed diagnoses of polycystic kidney disease; chronic back pain; chronic recurrent migraines; episodic confusion; recurrent dizziness; cognitive disorder NOS; adjustment disorder; depression; generalized anxiety disorder; and leg length discrepancy (right greater than left) causing hip pain. Tr. 570-71. He indicated that Plaintiff needs to lie down for one to two hours every day, and that working on a regular basis would cause her condition to deteriorate. Tr. 571. He opined that stress would worsen Plaintiff's depression and that physical labor would worsen her back pain. Tr. 571. Mr. Lelis indicated that Plaintiff would miss four or more days of work per month due to back pain and headaches, and possibly due to

confusion, depression, or anxiety.  Tr. 571.  The ALJ gave little weight to Mr.

Lelis' opinion.[3]  Tr. 642.

First, the ALJ found the restrictions assessed by Mr. Lelis are not supported

by the totality of the evidence and are based primarily on Plaintiff's subjective

complaints.  Tr. 642. A physician's opinion may be rejected if it is based on a

claimant's subjective complaints which were properly discounted.  *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595,

602 (9th Cir. 1999); *Fair*, 885 F.2d at 604.  However, the ALJ must provide the

basis for the conclusion that an opinion was more heavily based on a claimant's

self-reports than the medical evidence.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162

(9th Cir. 2014).   In support, the ALJ noted that Mr. Lelis mentioned Plaintiff's

symptoms are pain and forgetfulness, but Plaintiff's pain complaints were treated

conservatively and Plaintiff did not follow prescribed treatment for her leg pain.

Tr. 570, 642.  The ALJ determined these factors suggest Plaintiff's pain is less

severe than alleged.  Tr. 642.

Plaintiff argues Mr. Lelis indicated in the "signs" section of the medical

report that he relied on ultrasound and xray images and therefore relied on

---

[3] As a physical therapist, Ms. Lelis is an "other source" under the regulations.  20
C.F.R. § 404.1513(d).  Thus, the ALJ was required to cite germane reasons for
rejecting the opinion.  *See Molina*, 674 F.3d at 1104.

objective findings.  ECF No. 10 at 16.  However, the ultrasound involved cysts in Plaintiff's liver and kidneys which were found to be stable and which the ALJ reasonably characterized as "relatively benign."  Tr. 348, 570, 639.  The lumbar x-ray found only "[m]ild straightening of the lumbar [s]pine without evidence acute osseous abnormality."  Tr. 347.  Mr. Lelis also noted an x-ray showed a tilted pelvis due to leg length discrepancy, but the ALJ observed the degree of the discrepancy is not found in the record.  Tr. 570, 640-41; *see also* Tr. 619 (note that x-ray of pelvis found right ileac crest is higher than left).  The ALJ reasonably found that these limited signs do not support the level of limitation assessed by Mr. Lelis and that his findings are therefore based primarily on Plaintiff's self-report.

Second, the ALJ rejected Mr. Lelis' opinion that Plaintiff would miss four or more days of work per month because Plaintiff's headaches decreased with treatment.  Tr. 642.  Even if the ALJ is correct with regard to headaches, this does not address Mr. Lelis' opinion that Plaintiff would also miss work due to back pain.  This reasoning is insufficient to reject Mr. Lelis' opinion.

Third, the ALJ found that Plaintiff's daily activity of caring for four children is inconsistent with Mr. Lelis' opinion.  Tr. 642.  The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain.  *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001).  However, an ALJ must make specific findings before relying on childcare as an activity inconsistent with disabling limitations.  *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).  Here, the ALJ made no specific findings about the extent

of Plaintiff's childcare activities except to note that she needed help with them. This is insufficient to establish that they are inconsistent with the limitations assessed by Mr. Lelis. Tr. 642.

### 6. Dave Bullock, PT

Mr. Bullock completed a medical report form in August 2017 and indicated a diagnosis of lower back pain. Tr. 1184-85. He indicated that Plaintiff needs to lie down three to four times per day for an hour at a time, that she had been attending physical therapy on and off for over one year without improvement, that her condition will likely get worse over time, and that she had tried to return to work but cannot hold a job due to back pain and weakness. Tr. 1184-85. He also opined that Plaintiff would miss four or more days of work per month and that it is unlikely that Plaintiff would be able to make it through an eight-hour workday due to back pain. Tr. 1185. The ALJ did not address Mr. Bullock's opinion.

Defendant notes that Mr. Bullock's 2017 opinion is dated after the date last insured in 2015, suggesting that it is not relevant. ECF No. 13 at 7. A statement of disability made outside the relevant time period may be disregarded. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). However, Mr. Bullock indicated that Plaintiff had been treated off and on since December 2010 and continued to have consistent pain and weakness in her lower back which prevented her from returning to work. Tr. 1185. This could reasonably imply that Plaintiff's back pain prevented her from work during the relevant period, which would be relevant to Plaintiff's claim. Since this matter is remanded on other grounds, the

ORDER ~ 21

ALJ should consider Mr. Bullock's opinion and assign appropriate weight on remand.

**B.     Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims.  ECF No. 11 at 14-16.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found Plaintiff's migraines improved with treatment. Tr. 638. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Plaintiff contends the ALJ improperly considered her migraines because the ALJ noted an MRI of Plaintiff's brain in November 2013 was normal other than

ORDER ~ 23

minimal right frontal white matter disease. ECF No. 10 at 17-18; Tr. 638. The ALJ commented that "[e]ven this finding was characterized as only potentially relevant." Tr. 638 (citing Tr. 581, "minimal nonenhancing right frontal white matter disease, potentially related to white matter ischemic gliosis . . . or migraine headaches"). Plaintiff cites a 2014 neurology note indicating, "[i]t is not uncommon to see white matter change in patients with migraine." Tr. 917. Plaintiff does not explain how this "contrasts" with the ALJ's statement or how the neurology note sheds any light on the intensity and frequency of Plaintiff's symptom claims. Furthermore, the finding of minimal white matter disease has no bearing on the ALJ's conclusion that Plaintiff's migraines improved with treatment.

Plaintiff also contends that the ALJ's finding that Plaintiff's headaches improved with treatment is "irrelevant." ECF No. 10 at 18. As noted *supra*, improvement with medication is a reasonable consideration in evaluating symptom claims. Plaintiff cites records indicating that even with medication, migraines caused interruptions in an April 2011 medical evaluation and a June 2012 psychological evaluation, and that Plaintiff visited the emergency room for her headaches in April 2011 and September 2014. ECF No. 10 at 18 (citing Tr. 411, 423, 542, 1148). However, the ALJ noted that in April 2011, Plaintiff was not taking her headache medication due to pregnancy, Tr. 638 (citing Tr. 409, 415), so the interrupted medical evaluation and emergency room visit at that time involved extenuating circumstances. Furthermore, during the hospital visit, her headache

ORDER ~ 24

completely resolved with treatment, Tr. 638 (citing Tr. 415), which supports the

ALJ's conclusion that Plaintiff's headaches improved with treatment.

The ALJ also noted that on March 13, 2012, Plaintiff reported her headaches

were worse, but by March 22 she reported that medication had decreased the

frequency of her migraines. Tr. 537, 617, 638. However, the ALJ overlooked a

statement in the March 22 record indicating that Plaintiff "has had a migraine for

the past 3 days that will not go away. Sumatriptan is effective for a while but then

pain returns." Tr. 617. Thus, while the frequency may have diminished, at least in

this instance, the intensity and duration of her migraines may not have improved.

The ALJ observed that an October 2013 EEG administered for evaluation of

migraines and confusion was normal, and that by November 2013, Plaintiff stated

her headaches were better. Tr. 573-74, 638. In January 2014, Plaintiff's

headaches were "doing better" after starting medication and in February 2014,

Plaintiff's headaches were "doing well." Tr. 599, 638, 916. However, as Plaintiff

points out, she visited the emergency room with a migraine in September 2014.

Tr. 1148. The ALJ observed that Plaintiff infrequently sought treatment for

headaches, that exacerbations were infrequent, and that Plaintiff responded to

treatment and therefore determined that Plaintiff's migraines "were not so

persistent during the relevant period to require a workplace limitation for regular

absences from the workplace." Tr. 638. Although the Court concludes the ALJ's

findings are regarding Plaintiff's migraines are largely reasonable, in light of the

errors made in considering the medical opinion evidence, some of which involve

opinions about limitations arising from migraine headaches, the ALJ shall reconsider the migraine evidence overall on remand.

Second, the ALJ found Plaintiff failed to follow up with treatment and infrequently complained of pain regarding varicose veins. Tr. 638. The ALJ is permitted to consider the claimant's lack of treatment in evaluating symptom claims. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). A claimant's failure to assert a good reason for not seeking treatment, "or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff contends she did not pursue treatment for varicose veins due to lack of insurance. ECF No. 19 at 22. In April 2012, after a venous ultrasound, Dr. Chaugle found no evidence of venous reflux and therefore Plaintiff did not qualify for ablation. Tr. 530. He recommended sclerotherapy. Tr. 530. In June 2015, ARNP Saunders noted that Plaintiff had seen Dr. Chaugle for varicose veins in April 2012 and, "I believe the[y] did not proceed with the sclerotherapy at that time due to insurance." Tr. 949; *see* Tr. 530 (April 2012 record from Dr. Chaugle). That same month, Plaintiff returned to Dr. Chaugle's office where it was noted that she had been seen three years previous and had not worn compression stockings or had any treatment. Tr. 1023. Dr. Chaugle indicated that individual veins could be treated with sclerotherapy or laser and recommended compression stockings to help with her pain. Tr. 1029.

The ALJ found the evidence does not support Plaintiff's assertion that she failed to follow up with recommended sclerotherapy treatment for her varicose veins due to lack of insurance. Tr. 639. The ALJ noted that Plaintiff received other specialized medical tests and procedures such as an EEG test and imaging after the April 2012 recommendation for sclerotherapy. Tr. 530, 639; *see* Tr. 569 (January 2013 imaging of spine), 573 (October 2013 EEG), 581 (November 2013 MRI). Plaintiff notes a September 2013 record indicates she had "gotten her insurance back," suggesting she did not have insurance for a period of time. ECF No. 19 at 22. Although Plaintiff may have been without insurance for some time between April 2012 and September 2013,[4] the ALJ's point is not diminished. It is reasonable to infer that if the symptoms from Plaintiff's varicose veins were as severe as alleged, she would have pursued treatment once she obtained insurance.

Further, the ALJ observed that a lack of insurance would not explain the lack of complaints related to her veins at visits to her primary care physician between April 2012 and June 2015. Tr. 639 (citing 593-624). Additionally, there was no mention of varicose veins at a January 2014 neurology evaluation or at a primary care appointment in May 2014. Tr. 639 (citing Tr. 916-18, 947-48). The

---

[4] An October 2012 record indicates Plaintiff "is in the process of applying for state insurance" and stated she would prefer to wait for an MRI, EEG, and lab work until she gets insurance coverage. Tr. 565, 567.

ALJ also noted that no physician prescribed leg elevation or described any limitation due to varicose veins that would prevent Plaintiff from walking or standing for two-hour intervals in and eight-hour day. Tr. 639. The ALJ's interpretation of the evidence is reasonable and supported by the record.

Third, the ALJ found the imaging of Plaintiff's back revealed only mild impairment. Tr. 638. The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ found that the objective findings regarding Plaintiff's back were "generally mild" and discussed the evidence in detail. Tr. 640. The ALJ also noted that treatment for Plaintiff's back issue was conservative, such as physical therapy, osteopathic manipulation, medication such as ibuprofen and Tramadol, home exercise, ice, and heat, and that treatment improved her symptoms. Tr. 641 (citing Tr. 494-96, 593-95, 948, 951-52, 1032). Plaintiff contends the ALJ did not state what other treatment could have been expected, ECF No. 10 at 20, but the ALJ noted that Plaintiff was never advised she was a surgical candidate or received advanced treatments such as injections or a TENS unit. Tr. 641.

Notwithstanding, a record from May 2013 cited by the ALJ in support of the finding that Plaintiff improved with physical therapy actually states that, "Plaintiff reports some progress but continues to have moderate symptoms." Tr. 1032.

ORDER ~ 28

Furthermore, as discussed *supra*, the ALJ did not address the August 2017 opinion of physical therapist Bullock that despite off and on treatment since December 2010, Plaintiff continued to have consistent pain and weakness in her lower back which prevented her from returning to work. Tr. 1185. The ALJ noted that Plaintiff had worked with back pain in the past as a factor undermining her symptom claims, Tr. 640 (citing Tr. 602), but as Plaintiff points out, she reported in September 2010 that her back had been worsening over previous few months and the pain had never been as bad before. ECF No. 10 at 20; Tr. 525. Based on these discrepancies and the errors made in considering the medical opinion evidence, Plaintiff's back pain must also be reconsidered on remand.

Fourth, the ALJ found Plaintiff received minimal evidence regarding Plaintiff's mental conditions. Tr. 638, 641. Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012).

The ALJ observed that other than a notation that some of Plaintiff's back pain may be attributable to stress, there was little or no discussion of mental health

ORDER ~ 29

symptoms or conditions until July 2012 when she was evaluated by Dr. Cooper. Tr. 521, 542-50, 641. The ALJ concluded that although Dr. Cooper found Plaintiff presented as somewhat tangential and had difficulty concentrating, "this was not her usual presentation." Tr. 641. The ALJ contrasted Dr. Cooper's findings with an October 2012 neurological evaluation for confusion where Plaintiff presented as alert and oriented with intact recent and remote memory, normal mood and affect, and normal judgment and thought content. Tr. 566, 641. The ALJ observed that Plaintiff's primary care records mentioned mental health conditions infrequently and there were no clinical mental status evaluation findings when they were mentioned. Tr. 641 (citing Tr. 592-624). The ALJ also noted that an EEG obtained in October 2013 was normal.[5] Tr. 573, 641. In January 2014, Plaintiff denied having any episodes of confusion over the previous few months. Tr. 641, 916.

The ALJ also observed that Plaintiff's complaints of confusion related to "past and isolated incidents." Tr. 641. However, the October 2012 neurologist notes cited by the ALJ indicate that Plaintiff reported "episodes of confusion over

---

[5] Plaintiff suggests the EEG finding is "immaterial" because "an EEG tests for epileptic activity, not 'confusion.'" ECF No. 10 at 21. The ALJ appropriately mentioned the EEG result because the neurologist ordered the EEG in response to Plaintiff's complaints of confusion and migraines.

the last year" and was concerned about "ongoing episodic confusion." Tr. 566. The ALJ characterized Plaintiff's description of her confusion as "benign" since she reported being unable to recall names. Tr. 642. However, the ALJ overlooked Plaintiff's statement that in addition to being unable to recall names, she was "confused about the situation at times." Tr. 642. Plaintiff told Dr. Cooper that she had difficulty remembering where things belong and put milk under the kitchen sink and her keys in the refrigerator. Tr. 544. Thus, it is not clear the ALJ properly considered Plaintiff's current symptom claims regarding confusion. On remand, the ALJ should revisit the records regarding Plaintiff's confusion symptoms.

Fifth, the ALJ found the evidence does not support a disabling limitation due to Plaintiff's leg length discrepancy. ECF No. 10 at 19-20. The ALJ discussed the record regarding this impairment and explained how any limitation arising from Plaintiff's leg length discrepancy was incorporated into the RFC finding. Tr. 638; *see* Tr. 640-41. Plaintiff contends that her leg length discrepancy was "largely linked to her ongoing back pain," ECF No. 10 at 20, while the ALJ noted the record indicates her back pain "may" be impacted by the discrepancy. Tr. 619, 640-41. Nonetheless, the ALJ reasonably found the limitations on walking and standing contained in the RFC are consistent with any limitation arising from Plaintiff's leg length discrepancy. *See supra*.

Sixth, the ALJ found the record does not support the level of limitation claimed regarding Plaintiff's kidney cysts. Tr. 640. The ALJ noted the cysts were

benign and did not affect Plaintiff's renal function in 2011 and 2013. Tr. 381, 563, 640. Plaintiff did not complain of frequent urination or receive specialized urological treatment. Tr. 640. In December 2015, Plaintiff sought emergency room treatment for abdominal pain, but it was not clear that was related to her kidneys and, regardless, she left shortly after arriving because her pain went away. Tr. 640, 963-64.

Plaintiff contends "the ALJ's finding her kidney cysts were not correlated to her back pain is [] incorrect." ECF No. 10 at 20. Plaintiff cites a note by Mr. Lelis that back pain in March 2012 "could be an exacerbation of [polycystic kidney disease] that is swelling." ECF No. 10 at 20; Tr. 539. "Could be" is speculative and not a clinical finding. Further, the ALJ did not "find" that Plaintiff's kidney cysts were not related to her back pain, only that there is no clinical confirmation of such a correlation in the record. Tr. 640 (citing Tr. 621). Additionally, the ALJ addressed Plaintiff's limitations due to back pain as discussed *supra*, so regardless of whether kidney cysts contribute to Plaintiff's back pain, these symptoms were sufficiently evaluated by the ALJ.

## C.    English Language Limitations

Plaintiff contends the ALJ failed to properly assess her English language limitations at step four and step five of the sequential evaluation. ECF No. 10 at 5-7. The ALJ acknowledged Plaintiff's marginal education and difficulty communicating in English but observed that the Medical-Vocational rules would direct the same outcome whether Plaintiff was illiterate or unable to communicate

ORDER ~ 32

in English, or whether Plaintiff had limited or less education but was at least literate and able to communicate in English. Tr. 645; Medical-Vocational Rules 202.16 and 202.17. Indeed, the Medical-Vocational Guidelines indicate:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or the ability to communicate in English has the least significance. . . . The capacity for light work [or sedentary work] represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.

20 C.F.R. Part 404, Subpart P., App. 2, Rule 202.00(g); *see also* 20 C.F.R. Part 404, Subpart P., App. 2, Rule 201.00(i). Notwithstanding, because the ALJ determined other limitations exist in addition to the limitation to light work, the Medical-Vocational Guidelines do not apply. Thus, the ALJ presented the hypothetical to the vocational expert to determine the extent the additional limitations erode the unskilled light occupational base. Tr. 646.

The vocational expert testified that a hypothetical individual with limitations contained in the RFC could perform Plaintiff's past relevant work and provided examples of other work in the national economy that could be performed. Tr. 681-83. In order to rely on the testimony of a vocational expert about the requirements of a particular job, the ALJ must inquire whether the expert's testimony conflicts with information contained in the Dictionary of Occupational Titles (DOT) and must "obtain a reasonable explanation" for any conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007); Social Security Ruling 00-4p. The vocational

expert testified that the occupations identified as available to the hypothetical worker, including past work, could be performed as generally described by the DOT. Tr. 683-84.

Plaintiff asserts the vocational expert's testimony deviates from the DOT because "[t]he record indicates [Plaintiff] is unable to communicate in English" and the DOT requirements for Level 1 jobs, the lowest level of jobs in the DOT, includes the ability to communicate in English. ECF No. 10 at 6. However, "[c]ourts recognize that finding an illiterate [or non-English-speaking] individual is unable to do Level 1 jobs would mean that illiteracy is a per se disability under the DOT which would be illogical and conflict with the Social Security regulations." *Yang v. Saul*, No. 1:18-CV-00759-BAM, 2019 WL 4392417, at *7 (E.D. Cal. Sept 13, 2019) (citing *Guerrero v. Comm'r of Soc. Sec.*, No. 1:16-CV-00573-SAB, 2017 WL 2189515, at *5 (E.D. Cal. May 18, 2017); *Landeros v. Astrue*, No. CV 11-7156-JPR, 2012 WL 2700384, at *5 (C.D. Cal. Jul. 6, 2012) (noting that to find that non-English-speaking claimant "could not perform her past relevant work as a factory helper because it requires level-one language development . . . would be to find that every illiterate or non-English-speaking plaintiff is per se disabled regardless of their work history"); *Meza v. Astrue*, No. 09-1402, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011) (finding illiteracy not inconsistent with jobs requiring level 1 language); *cf. Rivera v. Colvin*, No. CV 14-09217-KS, 2016 WL 94231, at *6-8 (C.D. Cal. Jan. 7, 2016) (finding no conflict between DOT and

VE's testimony that person with "somewhat limited ability to communicate in English" could perform jobs requiring Level 1 language proficiency).

The fact that a claimant does not speak, read, or write English does not by itself mean the claimant is disabled. *Herrera v. Colvin*, No. CV 14-2306-KES, 2015 WL 5446001, at *2 (C.D. Cal. Sept. 16, 2015) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 ("A claimant is not per se disabled if he or she is illiterate.")). In fact, a claimant's past relevant work is a testament to employability despite an inability to speak English. *Herrera*, 2015 WL 5446001 at *id.* (citing *Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002); *Landeros v. Astrue*, No. 11-7156, 2012 WL 2700384, at *5 (C.D. Cal. July 6, 2012)).

Notwithstanding, "in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *Johnson v. Shalala,* 60 F.3d at 1435); *see also Ni Ni Yu v. Saul*, No. 18-CV-07792-VC, 2019 WL 6126866, at *1 (N.D. Cal. Nov. 19, 2019) (finding that "the vocational expert, and ultimately the ALJ, must explain persuasively why a person whose illiteracy would normally disqualify him from certain jobs under the Dictionary's framework can nonetheless perform those jobs" and without such explanation, the decision is not based on substantial evidence). Because the ALJ and the vocational expert failed to discuss the deviation from the DOT regarding Plaintiff's limited ability to communicate in English, it must be addressed on remand.

**D.    Migraines**

Plaintiff contends the ALJ failed to properly assess Plaintiff's noise- and light-related limitations caused by migraines at step four and step five. ECF NO. 10 at 7-9. The RFC is "the most [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1). In making this finding, the ALJ need only include credible limitations supported by substantial evidence. *Batson*, 359 F.3d at 1197 (holding that ALJ is not required to incorporate evidence from discounted medical opinions into the RFC). Similarly, the ALJ's hypothetical to the vocational expert must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations. *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). If the hypothetical does not include all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991); *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir.1988); *Gallant v. Heckler*, 753 F.2d 1450, 1457 (9th Cir. 1984). Here, the ALJ's error in considering Dr. Hale's opinion may undermine the validity of the RFC and hypothetical to the vocational expert regarding possible limitations from Plaintiff's migraines. On remand, the RFC and hypothetical should be reconsidered in light of the reevaluation of the medical opinion evidence as discussed herein.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.

ORDER ~ 36

Accordingly, on remand, the ALJ shall reconsider the medical opinion evidence and provide legally sufficient reasons for rejecting any opinion or portion of an opinion. The ALJ shall also reconsider Plaintiff's symptom claims and consider evidence that is both favorable and unfavorable to Plaintiff. The ALJ may find it helpful to obtain testimony from a medical expert as the ALJ determines is appropriate. The ALJ shall make new findings at step four and step five, and shall obtain testimony from the vocational expert regarding deviation from the DOT regarding English language limitations or any other relevant limitations.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** December 12, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge